ORDERED.

Dated: September 15, 2021

_____
Lori V. Vaughan
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re: | ) |
| | ) |
| Kristin Lee Davis, | ) Case No. 6:20-bk-06209-LVV |
| | ) Chapter 13 |
| Debtor. | ) |
| | ) |

**MEMORANDUM OPINION SUSTAINING DEBTOR'S
OBJECTION TO AMENDED CLAIM 4 OF BANK OF AMERICA, N.A.**

In 2007, the Debtor sought to refinance the mortgage on her home, but at closing discovered errors in the loan documents. Assured by the closing agent that revised loan documents were forthcoming and her right to cancel the loan would be extended, the Debtor proceeded with the loan closing. The Debtor never received the revised loan documents and canceled the loan. But the bank funded the loan anyway. Bank of America, N.A. ("BOA")[1] filed a secured claim in the Debtor's chapter 13 case, asserting that the Debtor did not timely cancel the loan and even if she did, the Debtor's statements in prior bankruptcy cases and the state court's ruling in the related

---

[1] IndyMac Bank, FSB initially held the note and mortgage which it later assigned to Bank of America, N.A., who has used Ocwen Loan Servicing, LLC and PHH Mortgage Corporation to service the loan. *See* Proof of Claim 4-2. For the purposes of this Order, the timing and exact role or relationship between IndyMac Bank, Bank of America, Ocwen Loan Servicing and PHH Mortgage Corporation is irrelevant. As such, the Court refers to them collectively as "BOA."

foreclosure action bar the Debtor from now asserting she canceled the loan and that the mortgage is void.

After considering the evidence and argument of counsel at trial,[2] the Court finds that the Debtor timely rescinded the loan and is not precluded from arguing recission in this case. Because the Debtor timely rescinded the loan and BOA failed to demonstrate what amounts, if any, the Debtor may have received from the loan, the Debtor's objection to claim (Doc. No. 21) is sustained. BOA's mortgage is void and its claim disallowed in its entirety.

### Factual Background

In 2005, the Debtor acquired real property located at 16719 Corner Lake Dr. Orlando, FL 32820 (the "Home"). She obtained a $90,000 loan for home improvements and to purchase a vehicle. The $90,000 loan, secured by a mortgage on the Home, would be paid over 30 years with 6% interest ("Initial Loan"). For the next two years, the Debtor, who then worked as a truck driver, believed she paid down the Initial Loan to approximately $40,000.

In 2007, the Debtor sought to refinance the Initial Loan. The Debtor believed she would receive a $150,000 loan with a fixed lower (3 to 4%) interest rate. Debtor intended to use the loan to pay the balance of the Initial Loan, some other creditors, and have funds available for her personal use. On March 7, 2007, the loan closing occurred at the Home, with the Debtor and a notary present. Upon reviewing the loan documents, the Debtor discovered that the Truth in Lending disclosure statement provided that the loan had a variable 8.5% interest rate and 40-year term. The Notice of Right to Cancel provided the Debtor had through March 10, 2007 to cancel the loan ("Cancelation Notice").[3]

---

[2] The trial was held on July 29, 2021.
[3] Debtor Ex. 1.

The Debtor immediately called the closing agent, who told her that she would receive corrected loan documents tomorrow, but that she should sign the loan documents provided so funding would not be delayed. The closing agent also told the Debtor she would have an additional day to cancel the loan. Based on the closing agent's statements, the Debtor signed some loan documents, including the note and mortgage ("Loan").[4] The Debtor, however, did not sign the Truth in Lending disclosure statement.[5]

The Debtor never received the revised loan documents. The Debtor signed the Cancelation Notice and on March 11, 2007, the Debtor's friend, Stephen Weaver, faxed the Cancelation Notice with a cover page to BOA.[6] The Debtor's exhibits at trial included a fax report showing that on March 11, 2007 at 7:38 p.m. a two-page document was faxed to the number provided on the Cancelation Notice.[7] Although the Debtor sent the Cancelation Notice, BOA still funded the Loan.

A few days later, the closing agent sent the Debtor documentation regarding the Loan, including checks payable to some of her creditors.[8] The Debtor did not receive a check for funds she anticipated from the Loan for her personal use. On March 22, 2007, the Debtor contacted the closing agent, informing them that she timely faxed the Cancelation Notice to BOA for the Loan.[9] At no time did the Debtor send the checks to her creditors or otherwise endorse them. Although the Debtor never received another payment demand for the Initial Loan, the Debtor did not know who or how much was paid on her behalf. BOA provided no evidence at trial on how much it paid to the Initial Loan or other creditors, if any. BOA submitted only a payment history with a

---

[4] Proof of Claim 4-2.
[5] Debtor Ex. 1. The Debtor testified that she did not sign the Truth in Lending disclosure statement for the loan. The Debtor also did not sign the acknowledgment in the Notice of Right to Cancel which stated that the loan had been consummated or that she received the Truth in Lending disclosure statement.
[6] Debtor Ex. 2.
[7] Debtor Ex. 3.
[8] The Debtor testified that she received at least one check payable to a business that was not a creditor of hers.
[9] Debtor Ex. 6.

$150,000 starting balance for the Loan. Because the Debtor believed she timely canceled the Loan, she never made a payment to BOA.

In 2008, BOA filed a complaint against the Debtor in the Circuit Court for Orange County, Florida seeking to foreclose on the Home ("Foreclosure Action").[10] During the Foreclosure Action, the Debtor filed three bankruptcy cases.

Ch. 13 Bankruptcy

On January 24, 2014, the Debtor filed a chapter 13 bankruptcy case.[11] The Debtor listed BOA as a secured creditor with a disputed claim of $150,000.[12] The Debtor's initial plan disputed that BOA had a valid claim secured by the House and did not provide for payment to BOA.[13] After the Chapter 13 Trustee sought dismissal of the case for failing to provide adequate protection payments to BOA,[14] the Debtor amended her plan to pay BOA $95,000 and requested mediation with BOA.[15] Before mediation could be completed or the plan confirmed, on August 15, 2014, the Court dismissed the Debtor's case for failing to make the plan payments.[16] BOA never filed a proof of claim in the case.

Ch 7 Bankruptcy

On December 27, 2015, the Debtor filed a chapter 7 bankruptcy case.[17] The Debtor listed BOA as a secured creditor with a claim of $150,000.[18] The Debtor's Statement of Intentions for BOA's claim provided she would "retain the property and redeem it" and "retain the property and enter into a Reaffirmation Agreement" and "retain the property and avoid lien using 11 U.S.C. §

---

[10] *Bank of America, N.A. v. Davis et.al.*, Case No. 2008-CA-0020391-O.
[11] *In re Davis*, Case No. 6:14-bk-00828-CCJ (Bankr. M.D. Fla. Jan. 24, 2014) ("2014 Case").
[12] 2014 Case Doc. No. 17.
[13] 2014 Case Doc. No. 16.
[14] 2014 Case Doc. No. 20.
[15] 2014 Case Doc. No. 40.
[16] 2014 Case Doc. No. 48.
[17] *In re Davis*, Case No. 6:15-bk-10637-RAC (Bankr. M.D. Fla. Dec. 27, 2015) ("2015 Case").
[18] 2015 Case Doc. No. 7.

522(f)."[19] Although the Debtor's Statement of Intentions is confusing, she affirmatively did not state that she would "surrender" the House to BOA. On March 30, 2016, the Debtor received a discharge in her chapter 7 bankruptcy case.[20]

Four years after the Debtor received her discharge, BOA requested that the state court strike the Debtor's affirmative defenses in the Foreclosure Action.[21] The motion titled, Plaintiff's Motion for Judicial Estoppel, with Memorandum of Law, argued that due to the Debtor's failure to comply with her Statement of Intentions filed in the chapter 7 bankruptcy case, the Debtor was precluded from asserting her affirmative defenses in the Foreclosure Action. In a one-page order, the state court granted BOA's request, stating "Defendant's affirmative defenses are hereby stricken and Defendant is precluded from contesting in Plaintiff's foreclosure action" ("Order Striking").[22] The Foreclosure Action remains pending, with no final judgment having been entered in the case.

Current Chapter 13 Case

On November 6, 2020, the Debtor filed this chapter 13 bankruptcy case.[23] The Debtor listed BOA as a secured creditor with a disputed claim of an unknown amount.[24] The Debtor's amended plan provided that the Debtor will seek mediation with BOA and BOA will receive adequate protection payments of $342.64.[25] BOA filed proof of claim 4-2, as amended, alleging it has a $307,362.26 secured claim ("POC"). In support of the POC, BOA attached the following: mortgage proof of claim attachment, fees breakdown, escrow statement, the Adjustable Rate Note

---

[19] 2015 Case Doc. No. 7.
[20] 2015 Case Doc. No. 11.
[21] BOA Ex. 3. No evidence is before this Court demonstrating what affirmative defenses the Debtor raised in the Foreclosure Action.
[22] BOA Ex. 4.
[23] Doc. No. 1.
[24] Doc. No. 10.
[25] Doc. No. 25.

and Mortgage for the House and various documents demonstrating BOA currently holds the note and mortgage.

On April 4, 2021, the Debtor objected to the POC ("Objection").[26] The Objection alleged in detail how the Debtor canceled or rescinded the note and mortgage days after the Loan closing. The Debtor requested in part that the Court determine whether the Debtor effectively rescinded the Loan, and if rescinded, whether the Debtor was obligated to BOA under 12 C.F.R. § 1026.23(d)(3). If the Loan was not rescinded, the Debtor requested the Court determine how much BOA disbursed given Debtor's failure to negotiate the checks distributed, and how much is currently due and validly claimed by BOA. BOA responded by arguing that the Order Striking and *Rooker-Feldman* bars the Debtor from arguing cancelation or rescission of the Loan.[27]

On July 29, 2021, the Court held a trial on the Objection. The parties examined witnesses, including the Debtor, Mr. Stephen Weaver and BOA's representative, Louise Plasse and presented evidence. Although the parties had ample opportunity to present evidence on the Objection, the evidence before the Court consisted primarily of the Debtor's testimony. After hearing argument of counsel, the Court took the Objection under advisement.

## Discussion

Section 502 of the Bankruptcy Code[28] provides a proof of claim is deemed allowed until an interested party objects. 11 U.S.C. § 502(a). A proof of claim filed in accordance with the bankruptcy rules constitutes *prima facie* evidence of the validity and amount of the creditor's claim. *In re Thornburg*, 596 B.R. 766, 769 (Bankr. M.D. Fla. 2018)(quoting *In re Winn-Dixie Stores, Inc.*, 418 B.R. 475, 476 (Bankr. M.D. Fla. 2009) (internal quotation marks omitted)). When

---

[26] Doc. No. 21.
[27] Doc. No. 24.
[28] All references to the Bankruptcy Code refer to 11 U.S.C. §§ 101 *et seq*.

an objection is filed, the objecting party has the burden of proof to rebut the *prima facie* validity of the proof of claim. *Id*. (citing *In re Eddy*, 572 B.R. 774, 778–79 (Bankr. M.D. Fla. 2017). The objecting party must refute the legal sufficiency and make a good argument why the claim should not be allowed as filed. *Id*. at 770.  As quoted by Judge Jennemann in *Thornburg*:

> [T]he objecting party [must]...produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency. This can be done by the objecting party producing specific and detailed allegations that place the claim into dispute, by the presentation of legal arguments based upon the contents of the claim and its supporting documents...in which evidence is presented to bring the validity of the claim into question. If the objecting party meets these evidentiary requirements, then the burden of going forward with the evidence shifts back to the claimant to sustain its ultimate burden of persuasion to establish the validity and amount of the claim by a preponderance of the evidence.

*Thornburg*, 596 B.R. at 770 (quoting *In re Armstrong*, 320 B.R. 97, 103 (Bankr. N.D. Tex. 2005) (internal quotations omitted) (citations omitted)).

Here, the Debtor has met her initial burden. The Debtor objected to the POC and demonstrated with credible evidence that she canceled the Loan and she could not have owed the full $150,000 because neither she nor her creditors endorsed the checks issued and the House only had a $40,000 mortgage. The burden now shifts to BOA to demonstrate by a preponderance of the evidence the validity and amount of the POC. To demonstrate the legal validity of the claim, BOA relies on the *Rooker-Feldman* doctrine, collateral estoppel, judicial estoppel and Debtor's failure to timely cancel the Loan under the Truth in Lending Act.

*Rooker-Feldman* Doctrine

The Court first addresses BOA's argument that the *Rooker-Feldman* doctrine bars the Debtor alleging she timely canceled the Loan because the state court struck the Debtor's

affirmative defenses and held she could not contest the Foreclosure Action. But here, the state court never entered a judgment in the Foreclosure Action.

*Rooker-Feldman* only applies when a litigant asks the federal court to modify or overturn a state court judgment.[29] *Behr v. Campbell*, Case No. 18-12842, 2021 WL 3559339 at *4 (11th Cir. Aug. 12, 2021)("*Rooker- Feldman* means that federal district courts cannot review or reject state court judgments rendered before the district court litigation began.") Its application is narrow and only bars "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id*. at *4 (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005)).

Under *Rooker-Feldman*, the District Court, and here the Bankruptcy Court, have no jurisdiction to consider appeals from state court judgments. *Id*. at *2-3. "Only when a losing state court litigant calls on a district court to modify or overturn an injurious state-court judgment should a claim be dismissed under *Rooker-Feldman*; district courts do not lose subject matter jurisdiction over a claim simply because a party attempts to litigate in federal court a matter previously litigated in state court." *Id*. at *3 (quoting *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 292-93 (2005) (internal quotations omitted)). *Rooker-Feldman* does not bar all attempts to litigate a matter that was previously litigated in state court—only those matters reduced to a final judgment are barred since federal courts do not have appellate jurisdiction. Here, because there is no final judgment, *Rooker-Feldman* does not apply.

---

[29] *Rooker-Feldman* likewise bars litigants' attempts to overturn a state court judgment even if a litigant characterizes the attempt as something else. *Behr v. Campbell*, Case No. 18-12842, 2021 WL 3559339 at *8 (11th Cir. Aug. 12, 2021).

Collateral Estoppel

Although not raised in its pleadings, BOA countered at trial that collateral estoppel applies to preclude litigation of the cancelation issue. Because the Florida state court entered the Order Striking, collateral estoppel under Florida law is applied. *In re St. Laurent*, 991 F.2d 672, 675-76 (11th Cir. 1993)( "If the prior judgment was rendered by a state court, then the collateral estoppel law of that state must be applied to determine the judgment's preclusive effect."). Under Florida law, collateral estoppel "bars relitigation of issues that were actually adjudicated in the prior suit." *In re Bhairo*, Case No. 8:19-bk-08804-MGW, 2021 WL 2981066 at * 3 (Bankr. M.D. Fla. July 15, 2021). But, collateral estoppel likewise requires a final order or judgment. *Id*. Here, the Order Striking is not a final order or judgment. *See HZJ, Inc. v. Wysocki*, 511 So.2d 1088, 1088-89 (Fla. 3d DCA 1987) (treating order striking answer and affirmative defenses as interlocutory order). Until the state court has entered a final judgment, it may alter preliminary rulings in the case. *Abdullatif Jameel Hospital v. Integrity Life Sciences, LLC*, Case No: 8:15–cv–2160–MSS–JSS, 2016 WL 9526457 (M.D. Fla. Sept. 23, 2016). Accordingly, the Debtor is not barred from litigating the issues raised in her Objection.

Judicial Estoppel

The Court further finds that the Debtor's arguments are not barred by judicial estoppel. "The equitable doctrine of judicial estoppel is intended to prevent the perversion of the judicial process and protect its integrity by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Slater v. U.S. Steel Corp.*, 871 F.3d 1174, 1181 (11th Cir. 2017) (quoting *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001)(internal quotations omitted)). Courts in this circuit may apply judicial estoppel when a party took an inconsistent position under oath in a separate proceeding and these inconsistent positions were "calculated to

make a mockery of the judicial system." *Slater* 871 F.3d at 1181. In determining whether the party's inconsistent statements make a mockery of the judicial system, courts consider all the facts and circumstances of the case. *Id*. at 1185.

Here, the Debtor has consistently taken the position that the Loan was void and canceled. She disputed BOA's debt in this case and her prior chapter 13 bankruptcy case. She intended to "avoid the lien" in her prior chapter 7 case. And even if the Debtor made an inconsistent statement in her prior bankruptcy cases, the inconsistent statement does not make a mockery of the judicial system under these facts and circumstances. For thirteen years, the Debtor and BOA have been in dispute during which the Debtor made clear to this Court that she disputed the amounts owed to BOA or an issue existed between the parties. The Court finds, after considering the evidence and all the facts and circumstances, the Debtor has not made a mockery of the judicial system.

Cancelation of the Loan

The Debtor argues that she timely canceled the Loan. The Loan closed on March 7, 2007. The Notice of Cancelation provided to the Debtor required on its face, submission by midnight, March 10, 2007—three days after closing.[30]

The Debtor testified that she was presented with incorrect loan documents at closing and that the closing agent told her she would receive corrected documents the following day and would have an additional day to cancel as a result. The Debtor presented unrebutted evidence that she sent the cancelation to the proper fax number on March 11, 2007 at 7:38 p.m.—within the extended deadline.[31] Debtor's fax cover sheet further indicated that she was canceling the Loan due to the lender's failure to "provide proper figures, or paperwork."[32]

---

[30] Although March 10th was handwritten on the Notice of Cancelation, no party disputed that this was the date initially provided or that the closing occurred on March 7, 2007. In fact, the mortgage was notarized on March 7, 2007.
[31] Debtor Ex. 3.
[32] Debtor Ex. 2.

BOA presented no evidence to rebut the submission of the cancelation on March 11, 2007 or that the closing agent told the Debtor she would have one additional day to cancel. Although BOA objected to the closing agent's statement as hearsay, the Court rules that the closing agent's statements are not hearsay as the admission of a party opponent. *See* Fed. R. Evid. 801(d) (statement by opposing party is not hearsay); *Pappas v. Middle Earth Condominium Ass'n*, 963 F.2d 534, 537-38 (2d Cir. 1992)(admissibility under Rule 801(d) should be given freely and the authority granted in an agency relationship need not include the authority to make the damaging statements, but simply authority to take action about which the statements relate); *United American Bank of Cent. Florida, Inc. v. Seligman*, 599 So.2d 1014, 1016 (Fla. 5th DCA 1992) (an escrow agent is an agent of all the principal parties to the transaction). Further, the Court finds the closing agent's statement is not being admitted for its truth, but for the impact on the Debtor's belief. *Weaver v. Tech Data Corp.,* 66 F.Supp.2d 1258, 1264-65 (M.D. Fla. 1999)(verbal or non-verbal conduct offered for inferring something other than the matter asserted is excluded from the hearsay rule).

The Court finds that the Debtor timely submitted the Notice of Cancelation and canceled the Loan. The Court finds the Debtor's testimony on this issue credible and BOA, despite having the burden, presented no evidence to rebut Debtor's testimony. It is further likely that the Debtor's right to cancel did not even expire on March 11, 2007 because, according to Debtor's unrebutted testimony, BOA never provided a corrected Truth in Lending Disclosure. 15 U.S.C. § 1635, 12 C.F.R. § 1026.23 (2021) (consumer may exercise right to rescind up to three days after delivery of "all material disclosures.").

What then is the impact of Debtor's rescission of the Loan? According to 12 C.F.R. § 1026.23(d)(1), "[w]hen a consumer rescinds a transaction, the security interest giving rise to the

right of recission becomes void and the consumer shall not be liable for any amount, including any finance charge." Accordingly, BOA's mortgage is void and of no force and effect, and the Debtor is not obligated on the Loan. Federal regulations further provide that the consumer may retain possession of any money or property received until such time the creditor has met its obligation to return any money or property given and to take action to reflect termination of the security interest. 12 C.F.R. § 1026.23(d)(2),(3). BOA has to date taken none of these actions. Not only has it not terminated the security interest, but it never sought return of any funds advanced.

      This result may seem like a windfall. BOA could have advanced other legal theories to establish the Debtor's liability for funds advanced to pay the Initial Loan or other obligations. But, BOA never made the argument at trial or in its pleadings. BOA's argument would have been unsuccessful for other reasons. First, BOA produced absolutely zero evidence—neither testimony nor documents—of the amounts it funded to pay the Initial Loan mortgage or any other debt. The only evidence submitted was a payment history simply showing a $150,000 balance as of May 2007 with no indication of how this amount was determined. BOA also submitted satisfactions of mortgage listing the face amount of loans to the Debtor that were satisfied, but these documents do not demonstrate the balance owed or who satisfied them. BOA likewise solicited no testimony to address this issue. BOA has the burden to establish its claim and failed to do so. Debtor also testified that the balance of her first mortgage was less than $90,000, further questioning how BOA arrived at $150,000 opening balance. Second, under the regulations cited above, Debtor has no obligation to return such funds. Finally, to the extent that the Debtor has any type of obligation to BOA, as of 2007, the claim would have been unsecured as result of 12 C.F.R. § 1026.23(d). BOA has filed no unsecured claim, nor can it file one now as the unsecured obligation was discharged in the Debtor's prior chapter 7 bankruptcy case.

As the prevailing party, the Debtor's request for attorney's fees and costs under the note and mortgage will also be granted. Fla. Stat. § 57.105(7) ("If a contract contains a provision allowing attorney's fees to a party when he or she is required to take any action to enforce the contract, the court may also allow reasonable attorney's fees to the other party when that party prevails in any action, whether as plaintiff or defendant, with respect to the contract.")

**Conclusion**

The Court finds the Loan was rescinded, BOA's security interest in the Home is void and BOA has not met its burden to establish that the Debtor is liable for payment of any amounts advanced. As a result, BOA's claim will be disallowed in its entirety. As the prevailing party, the Debtor is entitled to her reasonable attorney's fees and costs under the note and mortgage. The Court recognizes this ruling will result in a windfall to the Debtor, but BOA failed to meet its burden and provide this Court with credible evidence to rule otherwise. The Court will enter a separate order consistent with this memorandum opinion.

Attorney Michael Faro is directed to serve a copy of this order on all interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.